**E-FILED**
Wednesday, 11 September, 2013  03:58:19 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

GARY T. RAFOOL, not individually but)
as Trustee for Central Illinois Energy,)
L.L.C., )
      )
     Plaintiff/Appellant, )
      )
        v. )        Case No.  12-cv-1352
      )
MICHAEL E. EVANS and FROEHLING,)
WEBER & SCHELL, LLP, formerly doing)
business as FROEHLING, WEBER,)
EVANS & SCHELL, LLP, )
      )
     Defendants/Appellees. )

# O R D E R  &  O P I N I O N

This matter is before the Court on Appellant's appeal from the Bankruptcy Court for the Central District of Illinois' determination that the right to draw on a letter of credit is property of a bankruptcy estate and that Appellees therefore did not proximately cause Appellant's damages by failing to cause the Debtor to draw upon the letters of credit prior to the bankruptcy filing. Both Appellant and Appellee have filed their briefs on appeal, and the matter is now ready for disposition. For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

## LEGAL STANDARDS

This Court has jurisdiction to review the decision of the bankruptcy court pursuant to 28 U.S.C. § 158(a). On an appeal, a "district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment,

order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. District courts are to apply a dual standard of review when considering a bankruptcy appeal: the bankruptcy court's findings of fact are reviewed for clear error, while the conclusions of law are reviewed de novo. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). The Court reviews mixed questions of fact and law de novo. *Mungo*, 355 F.3d at 974.

A legal malpractice claim is made up of four elements: "(1) the existence of an attorney-client relationship that establishes a duty owed by the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages." 4 ILL. LAW AND PRAC. ATTORNEYS AND COUNSELORS § 85 (citations omitted). Before the Bankruptcy Court, the parties each cited Illinois law as governing the legal malpractice claim, and the Bankruptcy Court agreed that Illinois law probably controlled the claim. *In re Central Illinois Energy, L.L.C.*, 482 B.R. 772, 789 n. 3 (Bkrtcy. C.D. Ill. 2012). On appeal, neither party disputes this assumption, and the Court agrees that the underlying contract for legal services appears to have been formed and performed in Illinois by Illinois-licensed attorneys with an Illinois-based client, and is thus likely governed by Illinois law under both Illinois and federal choice-of-law rules. *Id.; see Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (internal quotation omitted) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); *In re Jafari*, 569 F.3d 644, 648-51 (7th Cir. 2009) (whether bankruptcy courts are to apply forum state's or federal choice-of-law rules unsettled in Seventh Circuit).

2

Finally, as relevant to this appeal, the Bankruptcy Code provides that a bankruptcy "trustee may not assume or assign any executory contract…if…such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." 11 U.S.C. § 365(c)(2). The Seventh Circuit has explained that "[§] 365(c)(2) prevents the assumption of a loan commitment or equivalent promise because the cost of future credit depends on the probability of repayment, and bankruptcy reveals that the risk of nonpayment is higher than the would-be creditor likely assumed." *In re United Airlines, Inc.*, 368 F.3d 720, 723 (7th Cir. 2004). As recognized by the Bankruptcy Court, the letters of credit at issue here indicate that New York state law governs their interpretation. *Central Illinois Energy*, 482 B.R. at 789 n. 3. This Court will thus look to New York state law to define the relationships created by letters of credit, in order to determine whether the one at issue here falls within § 365(c)(2). *See Auto-Owners Ins. Co.*, 580 F.3d at 547 (internal quotation omitted) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); *Jafari*, 569 F.3d at 648-51 (whether bankruptcy courts are to apply forum state's or federal choice-of-law rules unsettled in Seventh Circuit).

## BACKGROUND

Appellant does not challenge any of the Bankruptcy Court's factual findings, and the issues presented on appeal are ones of pure legal interpretation, so the Court will briefly summarize the facts from the Bankruptcy Court's opinion that are

relevant to the issues raised before this Court. *In re Central Illinois Energy, L.L.C.*, 482 B.R. 772 (Bkrtcy. C.D. Ill. 2012).

The Debtor in the bankruptcy proceeding from which this appeal arises is Central Illinois Energy, L.L.C., which was formed in 2004 for the purpose of constructing, owning, and operating an ethanol production facility. The Debtor arranged with Lurgi PSI, Inc. to design and construct the facility, and Lurgi provided the Debtor with letters of credit as a retainage of the monthly progress payments. Appellee Michael Evans, an attorney, represented the Debtor in these negotiations. The Debtor began to encounter financial difficulties, and consulted with Barry Barash, a bankruptcy attorney, in late fall of 2007. In November 2007, Lurgi obtained two letters of credit from Calyon Credit Agricole CIB in the Debtor's favor, expiring on December 15, 2008.[1] The Debtor never drew upon the Calyon letters of credit.

On December 8, 2007, the Debtor hired Mr. Barash to represent it in a chapter 11 bankruptcy proceeding. On December 13, 2007, the Debtor filed a chapter 7 bankruptcy petition. The Trustee brought a complaint against Appellees for legal malpractice, alleging that they had unreasonably failed to advise or cause

---

[1] In addition, in July 2006, Lurgi posted a letter of credit from DZ Bank AG, the amount of which was increased in January 2007. Lurgi also obtained another letter of credit from Commerzbank in August 2006. These letters of credit expired on December 15, 2007. These older letters of credit are not relevant to the instant appeal.

the Debtor to draw on the letters of credit prior to the bankruptcy filing, and seeking damages in the amount of the letters of credit.[2]

## BANKRUPTCY COURT'S DECISION

The Bankruptcy Court issued its Opinion on Appellees' Motion for Summary Judgment as to the malpractice claim on November 20, 2012. *Central Illinois Energy*, 482 B.R. 772. After reviewing the background facts summarized above and the applicable law, the Bankruptcy Court turned to the issues raised in Appellees' Motion for Summary Judgment. Appellees' Motion for Summary Judgment argued, in part, that they did not proximately cause Appellant's damages because the Debtor could have drawn upon the letters of credit after the bankruptcy filing.[3] Appellant argued in opposition that § 365(c)(2) applied to the letters of credit, preventing the Debtor from drawing upon them after the date of the bankruptcy filing.

The Bankruptcy Court found that § 365(c)(2) was not applicable to the letters of credit because the letters of credit were not "contracts of the Debtor," were not executory contracts, and were not "a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor." *Id*. at

---

[2]    The Trustee also argued, in the alternative, that Appellees breached their duty to the Debtor by failing to call or cause the Debtor to call upon the letters of credit prior to their expiration on December 15, 2007. The Bankruptcy Court resolved that claim by finding that the Calyon letters extended the termination date to December 15, 2008, and so there was no malpractice in not causing the Debtor to call upon them by December 15, 2007. *Central Illinois Energy*, 482 B.R. at 784. This finding is not at issue in the instant appeal.

[3]    As noted above, other issues were raised before the Bankruptcy Court that are no longer contested on appeal, and so the Court will not review the Bankruptcy Court's decisions as to those issues.

785-789. Because the letters of credit were not within the terms of § 365(c)(2), they could have been assumed by the Trustee even after the bankruptcy filing. *Id.* at 789-91. The Bankruptcy Court therefore concluded that the Appellees did not proximately cause the damages alleged because Mr. Barash, the Debtor's attorney, knew of the letters of credit by January 7, 2008, and could have drawn on them prior to their December 15, 2008 expiration.

## DISCUSSION

Appellant challenges the Bankruptcy Court's determination that § 365(c)(2) does not apply to the letters of credit, arguing that they were contracts between the Debtor and the issuing institution, that they were executory in nature, and that they were a financial accommodation. This finding was essential to the grant of summary judgment in Defendants' favor, so if it is reversed, summary judgment must be overturned and the case remanded to the Bankruptcy Court. Appellant concedes that if the Court affirms the Bankruptcy Court's analysis on this question, it should affirm the Bankruptcy Court's grant of summary judgment to Appellees.

Under 11 U.S.C. 365(c), "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties" in certain circumstances. The circumstance relevant to this malpractice action is where "such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." 11 U.S.C. § 365(c)(2). Appellees argued for summary judgment based, in part, on the assertion that this subsection was not applicable to the letters of credit,

such that the letters of credit could be assumed by or assigned to the bankruptcy estate. If the letters of credit could be assumed by or assigned to the bankruptcy estate, then their "failure" to advise the Debtor to draw on the letters of credit prior to the bankruptcy filing did not proximately cause the damages claimed in Appellants' malpractice action.

As agreed by the parties and Bankruptcy Court, in this case, § 365(c)(2) provides that the letters of credit were not assumable if they (1) were contracts of the Debtor, (2) were executory in nature, and (3) were "financial accommodations" to the Debtor or for the Debtor's benefit. If any one of these elements is missing, the estate could have drawn on the letters of credit, even after the date of the bankruptcy filing. The Bankruptcy Court found that none of these elements described the letters of credit in question, and so § 365(c)(2) did not apply and the letters of credit were assumable after the bankruptcy filing; because the estate could have drawn on the letters of credit even after the bankruptcy filing, Appellees' failure to advise the Debtor to draw on them prior to the filing did not proximately cause Appellant's damages. Appellant argues that the letters were contracts between the Debtor and the issuing institution, were executory, and were a financial accommodation, and were thus not assumable by the bankruptcy estate after the bankruptcy filing. If any one of these elements is missing, the decision of the Bankruptcy Court must be affirmed.

A letter of credit substitutes for payment from the applicant to the beneficiary, or, as in this case, the beneficiary holds the letter of credit and may draw upon it in lieu of retaining part of a payment to the applicant. *Nissho Iwai*

*Europe PLC v. Korea First Bank*, 782 N.E.2d 55, 58 (N.Y. 2002) (citations omitted).

The applicant for the letter of credit contracts with the issuer of the letter of credit,

in order to have the issuer pay out to the beneficiary upon the presentation of

appropriate documentation. *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 741

(2d Cir. 1999) (citing *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707

F.2d 680, 682 (2d Cir.1983); *First Commercial Bank v. Gotham Originals, Inc.*, 475

N.E.2d 1255 (N.Y. 1985)). The arrangement is thus made up of three relationships,

between the applicant, issuer, and beneficiary, and each relationship is independent

of the others; they can be thought of as a triangle. *Id.* Between the applicant and

beneficiary is an underlying contract; in this case, Lurgi and the Debtor contracted

for Lurgi to design and construct an ethanol production facility for the Debtor. *Id.*

The applicant, here Lurgi, then contracts with the issuer, here Calyon, for the

issuance of a letter of credit. *Id.* Finally, the issuer has an obligation under that

contract with the applicant to pay out to the beneficiary upon the presentation of

proper documentation; the beneficiary owes no duties to the issuer and confers no

benefit upon the issuer, though it must strictly comply with the form of

documentation for payment required by the letter of credit's terms. *Id.*; 4A

N.Y.Prac., Com. Litig. in New York State Courts § 69:28 (3d ed.).

　　　The hallmark of letter of credit law is the "independence principle," which

provides that each of these three relationships is independent of the others. *3Com

Corp.*, 171 F.3d at 741 (quoting *First Commercial Bank*, 475 N.E.2d 1255); 4A

N.Y.Prac., Com. Litig. in New York State Courts § 69:24 (3d ed.). The issuer's

duty to pay out to the beneficiary is not predicated on either the applicant's or the

beneficiary's performance of their underlying contract, or upon the applicant's performance of its obligation to the issuer; the issuer's good credit is substituted for the credit of the applicant and the parties are spared the expense and uncertainty of determining whether the obligations have been met. *3Com Corp.*, 171 F.3d at 741 (quoting *First Commercial Bank*, 475 N.E.2d 1255); *Nissho Iwai Europe PLC*, 782 N.E.2d at 58.

## I.   Letters of credit are not "contracts of the Debtor"

Appellant's argument that the letters were contracts of the Debtor is based on the premise that "there are three separate and distinct contracts involved in a letter of credit transaction," including a contract between the issuer of the letter and its beneficiary, and he cites a number of cases to this effect. The Bankruptcy Court considered the fact that "the beneficiary passes no value to the issuer, makes no promise to the issuer, and incurs no duty of performance to the issuer," and concluded that because the relationship lacked mutuality, it did not constitute a contract of the Debtor. *Central Illinois Energy*, 482 B.R. at 786 (citing *Jarka Corp. v. Hellenic Lines, Ltd.*, 182 F.2d 916, 918 (2nd Cir. 1950); *Consolidated Laboratories, Inc. v. Shandon Scientific Co.*, 413 F.2d 208, 212-13 (7th Cir. 1969)).

As Appellee points out, the cases cited by Appellant do not undertake any substantive analysis of whether a letter of credit constitutes a contract between the issuer and the beneficiary, but merely explain the independence principle or state without elaboration that a letter of credit is made up of three contracts. *See 3Com Corp.*, 171 F.3d at 741 (reviewing general letter of credit principles, described as "three separate and independent relationships"); *Marino Industries Corp. v. Chase*

*Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982) (calling letter of credit a "contract" between issuer and beneficiary in context of explaining independence principle and rule of strict compliance); *Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461, 464-65 (2d Cir. 1970) (stating that three separate contracts exist in letter of credit in context of explaining independence principle and rule of strict compliance); *CVD Equipment Corp. v. Taiwan Glass Indus. Corp.*, No. 10 Civ. 0573(JPO), 2012 WL 5506120, *4 (S.D. N.Y. Nov. 7, 2012) (referring to three "relationships," including "underlying contract," "application" between applicant and issuer, and "actual letter of credit which is the bank's irrevocable promise to pay," in explaining independence principle's application to all segments of letter of credit triangle); *ACE American Ins. Co. v. Bank of the Ozarks*, No. 11 Civ. 3146(PGG), 2012 WL 3240239, *4 (S.D. N.Y. Aug. 3, 2012) (calling letter of credit a "contractual relationship" while finding issuer's failure to pay out to beneficiary because of applicant's bankruptcy to be violation of independence principle);[4] *Gilday v. Suffolk County Nat. Bank*, 954 N.Y.S.2d 109, 113 (N.Y. App. Div. 2012) (calling letter of credit a "distinct contractual relationship" between beneficiaries and issuer, obligating issuer to pay out upon presentation of appropriate

---

[4]    This case does quote the statement that "[t]t is well settled that a letter of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate." *ACE American Ins. Co. v. Bank of the Ozarks*, No. 11 Civ. 3146(PGG), 2012 WL 3240239, *6 (quoting *In re Papio Keno Club. Inc.*, 247 B.R. 453, 459 (8th Cir.BAP2000)). Both *ACE American Ins. Co.* and the case it cites, though, concerned situations in which the *applicant* was the debtor, which comports with the analysis of this Court and the Bankruptcy Court, and is a function of the independence principle. *Id.*; *In re Papio Keno Club. Inc.*, 247 B.R. at 459.

documentation).[5] They do not examine the relationship between the issuer and beneficiary to determine if it is truly a contract under the principles of contract law, and fail to discuss the concept of mutuality, because their decisions do not turn on whether the relationship is truly a contract. Though some of them *call* letters of credit "contracts" or "contractual" as between the issuer and beneficiary, the cases do not actually *hold*, as a result of a considered analysis, that they are contracts.

The Court agrees with the Bankruptcy Court's analysis. Under well-settled principles of contract law, a letter of credit cannot constitute a contract between the beneficiary and the issuer, because the beneficiary owes no obligation of payment or performance to the issuer – there is no "mutuality" between the beneficiary and the issuer. 28 N.Y. PRAC., CONTRACT LAW § 2:3 ("Unless both parties to a contract are bound, so that either can sue the other for breach, neither party is bound and there is no enforceable contract.").[6] Another way of putting this is to say that there is no

---

[5]    Appellant also cites to two cases applying Illinois letter of credit law. As discussed above, the letters of credit's selection of New York law appears to be controlling, as Appellant recognizes in its brief. (Doc. 2 at 8 n. 2). Moreover, neither of the cited cases contradicts the New York authorities discussed above, and they do not actually analyze letters of credit in terms of whether the relationship between an issuer and a beneficiary is itself a contract. *Bank of North Carolina, N.A. v. Rock Island Bank*, 570 F.2d 202, 206 (7th Cir. 1978) (discussing whether letters of credit are prohibited by Illinois Banking Act; no mention of whether a letter of credit is a contract between issuer and beneficiary); *Stringer Const. Co. v. La Grange State Bank*, 499 N.E.2d 948, 951 (Ill. App. Ct. 1984) (calling letter of credit a "contract" between issuer and beneficiary, in context of ruling upon claim for breach of contract between issuer and applicant).

[6]    New York cases draw a subtle distinction between mutual "consideration" and "mutuality of obligation," but also say that the promisor must receive consideration in exchange for its performance in order to constitute a valid contract. 28 N.Y. PRAC., CONTRACT LAW § 2:33. Consideration is defined as "a benefit to the promisor or a detriment to the promisee." *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 444 (N.Y. 1982) (citing *Holt v. Feigenbaum*, 419 N.E.2d 332 (N.Y. 1981)).

consideration, which is "a benefit to the promisor or a detriment to the promisee," and "[a] contract that does not require performance by each party is unenforceable for lack of consideration." *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 444 (N.Y. 1982); 28 N.Y. PRAC., CONTRACT LAW § 2:27.

Appellant cites no cases standing for the proposition that the independence principle or § 365(c)(2) conflict with ordinary contract law, and so the Bankruptcy Code's use of the term "contract" should be read as having its ordinary legal meaning. The cases calling a letter of credit a "contract" between the issuer and the beneficiary are not using that term precisely, but are instead pointing out that the relationship between the beneficiary and the issuer is "independent" of the contract between the issuer and the applicant and of the contract between the applicant and beneficiary, such that the issuer owes payment to the beneficiary upon presentation of proper documents, regardless of whether the applicant or beneficiary have performed their obligations. That relationship is not itself a contract, because it lacks the mutuality essential to a contract, but is instead the issuer's performance

---

Because the basic concept is still that each party must be bound to do or give something in exchange for the other's performance or consideration, the Court will refer to it as "mutuality."

In a unilateral contract, the promisor becomes bound to perform or give consideration upon performance by the promisee, thus again resulting in each party's having performed or given consideration. *Flemington Nat. Bank & Trust Co. v. Domler Leasing Corp.*, 410 N.Y.S.2d 75, 79-80 (N.Y. App. Div. 1978) (citations omitted). In the letter of credit context, the beneficiary does not become obligated to do anything for the benefit of the issuer or to its own detriment upon payment by the issuer, so the letter of credit is also not a valid unilateral contract between the issuer and the beneficiary.

of its obligation under its contract with the applicant.[7] *See also Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1386 (8th Cir. 1996) (letter of credit not a contract between issuer and beneficiary; issuer is merely performing on its contractual obligation to applicant); *In re Montgomery Ward, LLC*, 292 B.R. 49, 54 (Bkrtcy. D. Del. 2003) (letter of credit not a contract between issuer and beneficiary because issuer has no cause of action against beneficiary for failure to present documents drawing upon letter of credit).[8]

   In its Reply, Appellant claims that this reading of the term "contract" is "esoteric" and should not be applied to § 365(c)(2). The Court does not deny that a letter of credit arrangement between the applicant and the issuer is a contract, and that there is typically an underlying contract between the applicant and the beneficiary, under either an "esoteric" or an ordinary definition – in this sense,

---

[7]   The independence principle prevents the beneficiary's obligation to the applicant from serving as consideration for the relationship between the beneficiary and the issuer, though in some cases a benefit to a third party can constitute consideration. 28 N.Y. PRAC., CONTRACT LAW § 2:29. Under contract law, "there must be a connection between the consideration a party receives and the party's promise for the consideration; the promise must purport to be the motive each for the other, in whole or at least in part." *Id*. Because an issuer may not look to whether the beneficiary has performed its obligation to the applicant in determining whether to pay out under a letter of credit, the beneficiary's performance benefitting the applicant cannot constitute consideration for the relationship between the beneficiary and the issuer.

[8]   Appellant objects to the Bankruptcy Court's citation of these two cases, but it misunderstands their import. (Doc. 2 at 14-16). In each of these opinions, unlike the cases cited by Appellant, the courts are analyzing the qualities of letters of credit in terms of contract law, to specifically determine if there exists a contract between the issuer and the beneficiary. This Court recognizes that they are not controlling authority, but it cites them as examples of the kind of analysis that must be undertaken in order to answer the question posed by the instant appeal; that question cannot be answered by citations to cases that merely refer to that relationship as a contract, without any analysis of the issue.

Appellant is correct that a letter of credit is "contractual in nature," and if an issuer fails to pay the beneficiary upon a proper demand for payment, the issuer has breached its contract with the applicant. However, as between the beneficiary and the issuer, the most basic requirement of contract, mutuality of obligation, is absent. It is not "esoteric" or inappropriate to apply the ordinary legal meaning to terms used in statutes.

The Court therefore concludes that the Bankruptcy Court did not err in finding that the letters of credit were not "contracts of the Debtor." This conclusion is alone enough to affirm the Bankruptcy Court's grant of summary judgment to Appellees, as it puts the letters of credit outside of § 365(c)(2).

## II.   Letters of credit were not "executory contracts"

As the Court has determined that the letters of credit were not "contracts of the Debtor" as required for them to be within the terms of § 365(c)(2), it is not strictly necessary to review the other two requirements of that section; § 365(c)(2) only prohibits the assumption of "contracts of the Debtor," so if the letters of credit were not such contracts, Appellees did not proximately cause the damages claimed by Appellant. However, it is a simple matter for the Court to also affirm that the Bankruptcy Court was correct in its determination that the letters of credit, as between Calyon and the Debtor, were also not executory contracts.

The Bankruptcy Court observed that the Seventh Circuit uses Professor Vern Countryman's definition of "executory" when applying § 365(c)(2), a federal statute. *Central Illinois Energy*, 482 B.R. at 786 (citing *In re Streets & Beard Farm Partnership*, 882 F.2d 233, 235 (7th Cir. 1989). Professor Countryman defined an

executory contract "as an agreement where 'the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'" *In re Streets & Beard Farm Partnership*, 882 F.2d at 235 (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN.L.REV. 439, 460 (1974)). This definition was drawn from the legislative history of the statute, but also conforms to the general common law meaning of the term "executory contract." 17 C.J.S. CONTRACTS § 8 ("A contract is executory when substantial performance remains due by both parties, such that failure of either to complete performance would constitute a material breach excusing performance of the other"). The Seventh Circuit also explained that '[i]n determining the significance of the remaining obligations under a contract we look to relevant state law." *Id.* (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)).

The Court agrees with the Bankruptcy Court that the term "executory," as used in § 365(c)(2), does not include the letter of credit relationship between the Debtor and Calyon. This is so because the Debtor did not owe an obligation to Calyon that excused Calyon from its obligation to perform. As discussed above, New York does not treat the presentation of conforming documents by the beneficiary of a letter of credit as an obligation of the beneficiary, and does not treat the failure to present conforming documents that excuses the issuer from its future obligation to pay upon the presentation of conforming documents. While the Debtor, in order to draw upon the letters of credit, had to submit conforming documents to Calyon in order to receive payment upon the letters, this was not an *obligation to* Calyon, but

merely a procedural component of making the demand for payment. If the Debtor did not submit conforming documents, either by not attempting to draw on the letters at a particular time, or by submitting non-conforming documents, this would not constitute a "breach" that would then release Calyon from its obligation; Calyon would still be obliged, under its contract with Lurgi, to pay out upon the later presentation of conforming documents (up to the letters' expiration date).

Appellant bases his argument that the letters of credit were "executory in nature" on two courts' use of the term "executory" in describing the fact that a beneficiary must present properly conforming documents to the issuer in order to receive payment. Appellant's argument is without merit. It is true that in *Union Planters Nat. Bank v. World Energy Systems Associates* and *Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, courts used the courts used the term "executory" to describe letters of credit. *Union Planters*, 816 F.2d 1092, 1098 (6th Cir. 1987) (citing, *inter alia*, *Diakon Love*) (applying Tennessee law and federal maritime law); *Diakan Love*, 584 F.Supp. 782, 784 (D.C. N.Y. 1984) (applying New York law and maritime garnishment law). It is plain that the term was used in these cases in an effort to explain that the issuer of the letters need not make payment to the beneficiary *until* the beneficiary presents conforming documents. In that sense, they are "executory," in that the issuer's performance depends on presentation of conforming documents, but they are not "executory" as that term is used in contract law or in § 365(c)(2), because the beneficiary is not obligated to the issuer; the issuer is not released from its obligation to remain ready to pay out by the beneficiary's failure to present conforming documents.

The letters of credit at issue here are not "executory contracts" within the meaning of § 365(c)(2) because they are not "executory" and are not "contracts," and so the Court affirms the Bankruptcy Court's decision.

### III. Letters of credit were not "financial accommodations to or for the benefit of the Debtor"

Finally, Appellant argues that the Bankruptcy Court erred in determining that the letters of credit were not "financial accommodations to or for the benefit of the debtor" because the Bankruptcy Court rejected Appellant's reliance on *In re Swift Aire Lines, Inc.*, 30 B.R. 490, 496 (9th Cir. 1983). Again, as the Court has determined that the letters of credit were clearly not executory contracts of the Debtor,  they are not within § 365(c)(2), and the Bankruptcy Court's decision must be affirmed. In order to be thorough, though, the Court will also address this issue.

The Bankruptcy Court cited to *In re Thomas B. Hamilton Co., Inc.*, in which the Eleventh Circuit, interpreting § 365(c)(2), explained that courts have been consistent in defining "financial accommodation:"

> Citing the legislative history quoted above and this passage from Collier on Bankruptcy, these courts uniformly conclude that § 365(c)(2) does not apply to all contracts that involve the extension of credit; rather, it applies to "contracts to make loans and other traditional kinds of debt financing arrangements." Thus, courts define the term "financial accommodations" narrowly, as "the extension of money or credit to accommodate another." Courts also distinguish between contracts for which the extension of credit is the primary purpose, that is, a primary contractual obligation, and contracts in which the extension of credit is only incidental to or a part of a larger arrangement involving the debtor; the former constitute contracts to extend financial accommodations while the latter do not.

969 F.2d 1013, 1018-19 (11th Cir. 1992) (citations omitted). The Seventh Circuit indicated its approval of most of the Eleventh Circuit's analysis in *In re United*

*Airlines, Inc.*, 368 F.3d 720, 723-24 (7th Cir. 2004) (citing *Thomas B. Hamilton*, 969 F.2d at 1019-20). The *United Airlines* court held that the courts should look to whether the purported "financial accommodation" is a material part of the overall transaction between the parties, rather than attempting to discern the parties' subjective "purpose." *Id.* at 724-25.

Under this controlling definition of "financial accommodation," the Court finds that the Bankruptcy Court was correct in determining that the letter of credit relationship between the Debtor and Calyon was not a "financial accommodation" to the Debtor within the meaning of § 365(c)(2). It was not a contract to a make loan to the Debtor, or another traditional kind of debt financing arrangement, such as a guarantee of the Debtor's financial obligations. *Thomas B. Hamilton*, 969 F.2d at 1018-19. The letter of credit here was a form of payment to the Debtor from Lurgi, held in lieu of the Debtor's retention of a portion of its payments to Lurgi as assurance of Lurgi's performance. As observed by the bankruptcy court, the letter of credit is more properly considered a financial accommodation to Lurgi, substituting Calyon's credit for Lurgi's, not to the Debtor. *Central Illinois Energy*, 482 B.R. at 789. Moreover, the letter of credit was only an incidental part of the underlying contract between Lurgi and the Debtor – it was merely the exercise of "an option to post an irrevocable standby letter of credit in lieu of 10% retainage." *Id.* at 782.

Finally, the Seventh Circuit has explained that the purpose of § 365(c)(2) is to protect lenders from being forced to persist in offering credit to newly bankrupt parties on the same favorable terms negotiated before the bankruptcy filing revealed the credit-unworthiness of the borrower. *United Airlines, Inc.*, 368 F.3d at

723. With this purpose in mind, it is plain that Calyon does not need such protection, as in the letter of credit situation Calyon does not look to the Debtor for repayment. A letter of credit, as discussed above, is triangular, and the issuer looks to the applicant for repayment of the funds paid out to the beneficiary, not to the beneficiary. The creditworthiness of the beneficiary is irrelevant to the letter of credit transaction and to the issuer, and so the issuer does not need the protection afforded by § 365(c)(2).[9]

Appellant's argument, both here and before the Bankruptcy Court, relies primarily on *In re Swift Aire Lines, Inc.*, in which the Ninth Circuit held that letters of credit are within the terms of § 365(c)(2), and are thus not assumable by the bankruptcy estate. 30 B.R. 490, 496 (9th Cir. 1983). In coming to this conclusion, the Ninth Circuit looked only to the legislative history of § 365(c)(2); the drafters of that subsection stated that "under the provision, contracts such as…letters of credit are non-assignable, and may not be assumed by the trustee." *Id.* (quoting H.R. REP. No. 95-595 (1977); *reprinted in* 1978 U.S.C.C.A.N. 5787, 6304). The *Swift Aire* court did not consider the several elements of § 365(c)(2), but simply seized upon the mention of "letters of credit" in finding that they were always within the statute. Appellants argue that *Swift Aire*'s reading of § 365(c)(2) as always including all three of the letter of credit relationships should control, notwithstanding the meaning of "contract" and "executory." The Bankruptcy Court addressed *Swift Aire*

---

[9]    It is also worth noting that § 365(e)(2)(B) permits contracts that are within § 365(c)(2) to be terminated upon a bankruptcy filing, lending further support to the conclusion that the purpose of § 365(c)(2) is to protect lenders from uncreditworthy borrowers by permitting them to escape from previous contracts to extend credit to newly-bankrupt parties.

in its Opinion, rejecting the argument that *Swift Aire*'s apparent conclusion that all letters of credit are always within the terms of § 365(c)(2) should determine the outcome in this case. *Central Illinois Energy*, 482 B.R. at 788-89. This Court agrees with the Bankruptcy Court's conclusion that *Swift Aire* was too broad, and that the legislative history's mention of letters of credit does not control the outcome in this case.

First, there is no need to resort to legislative history to determine if § 365(c)(2) applies in this case, as it is obvious that the letter of credit is not a "contract of the Debtor." Under the ordinary meaning of the term "contract," the relationship between the Debtor and Calyon does not fall within the terms of § 365(c)(2). Therefore, it is improper to resort to legislative history to define "contract" or to contradict its use in the statute. *Five Points Road Joint Venture v. Johanns*, 542 F.3d 1121, 1128 (7th Cir. 2008) (citing *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir. 1992) ("Resort to the legislative history…is only necessary if the language of the statute is ambiguous."). While courts have looked to legislative history in order to illuminate the statute's use of the term "executory," that term is not unknown in contract law, and, as mentioned above, its ordinary common law meaning comports with the meaning found by courts looking to legislative history.

The clear definition of those terms puts the letter of credit relationship at issue in this case outside of § 365(c)(2); even though "financial accommodation" may be ambiguous enough to justify a resort to legislative history, the letter of credit relationship at issue here was neither a "contract of the debtor" nor "executory in nature," so it is outside of § 365(c)(2) no matter what "financial accommodation"

20

means. In *Swift Aire*, the Ninth Circuit did not find that the statute's terms were ambiguous before turning to the legislative history, as required by the ordinary canons of statutory interpretation, but merely noted that "the legislative history…is pertinent," and thus held that a letter of credit relationship is always within § 365(c)(2). Under the governing law of this Circuit, it is inappropriate to resort to legislative history where a statute's terms are clear. *See, e.g.*, *United States v. Rand*, 482 F.3d 943, 947 (7th Cir. 2007) (citing *Holder v. Hall*, 512 U.S. 874, 932 n. 28 (1994); *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir. 1993)) ("When a statute is clear, any consideration of legislative history is improper."). Because the other operative terms of the statute put the letter of credit relationship here outside of § 365(c)(2), there is no need to resort to the legislative history in order to interpret the statue.

Even if the legislative history is considered, though, it must be considered in light of the structure of the statute and its purpose, as did the courts in *United Airlines* and *Thomas B. Hamilton*. As the Court explained above, the issuer-beneficiary relationship in a letter of credit transaction cannot be considered a financial accommodation to the beneficiary under the legislative history-based definition stated by *United Airlines* and *Thomas B. Hamilton*, and is thus outside of § 365(c)(2). Moreover, the letter of credit is only an incidental component of the underlying contract, and it does not serve § 365(c)(2)'s purpose to permit lenders to escape from uncreditworthy borrowers because the beneficiary of a letter of credit will never owe repayment to the issuer. The Bankruptcy Court noted that the legislative history quoted by the *Swift Aire* court does not distinguish between

situations where the debtor is the party applying for the letter of credit, and those where the debtor is the beneficiary of the letter of credit. *Central Illinois Energy*, 482 B.R. at 789. The Bankruptcy Court explained that in the former case, the letter of credit might be considered an accommodation for the benefit of the debtor, but it is certainly not such an accommodation in the latter case. It thus held that *Swift Aire*'s conclusion was too broad. *Id*. In light of the foregoing analysis, this Court agrees with the Bankruptcy Court.[10]

---

[10]    Appellant counters the Bankruptcy Court's analysis with the argument that if this letter of credit is not within § 365(c)(2) in regards to a debtor-beneficiary, then a letter of credit is never within the meaning of § 365(c)(2), and that the above-quoted language from the legislative history expressing Congress' intent would be meaningless – if debtor-beneficiaries' letters of credit are not subject to § 365(c)(2), then no letters of credit are ever within the terms of § 365(c)(2), and there would be no reason for the legislative history to refer to the non-assumability of letters of credit. Appellant points to caselaw holding that the proceeds of a debtor-applicant's letter of credit are not assumable by the bankruptcy estate, and to provisions of the bankruptcy code prohibiting financial institutions from becoming Chapter 7 debtors such that a letter of credit cannot be assumed by the bankruptcy estate of the issuer of the letter if the issuer is a financial institution. 11 U.S.C. § 109(b); *In re Keene Corp.*, 162 B.R. 935, 942 (Bkrtcy. S.D. N.Y. 1994 (letters of credit applied for by debtor are not property of debtor-applicant's estate).

Simply put, Appellant's argument is that the only member of the letter of credit triangle subject to § 365(c)(2) is the beneficiary, and so, since Congress meant for § 365(c)(2) to cover at least some letters of credit (as shown by the legislative history), Congress' intent must have been for § 365(c)(2) to prevent the assumption of letters of credit by the bankruptcy estates of beneficiaries. While the Court maintains that it is improper to resort to legislative history here, where the statute's terms are not ambiguous, the Court also notes that Appellant's argument, while somewhat persuasive, is not airtight. As Appellant point out, it is the case that, "typically," letters of credit are issued by financial institutions. (Doc. 2 at 20). However, Appellant points to no prohibition on entities other than financial institutions, as that term is used in § 109(b), issuing letters of credit. Thus, even under the terms of Appellant's argument, there could be some issuers of letters of credit that become bankruptcy debtors subject to § 365(c)(2). It is thus unnecessary to contradict the clear terms of the statute in order to comply with the supposed intention of the statute's drafters.

Finally, Appellant claims that Congress' failure to amend § 365(c)(2) to overturn *Swift Aire*'s interpretation of it is evidence of Congress' agreement with that interpretation. The Court does not agree that this inaction by Congress carries the weight Appellant ascribes to it. First, this is merely another form of legislative history, in that it looks to the implied meaning of Congress' inaction, rather than to the actual terms of the statute; thus, it should not be considered where the statute is clear. Moreover, Appellant points to no other courts following *Swift Aire*'s interpretation of § 365(c)(2) in the context of a debtor-beneficiary, which undercuts the contention that the case is so notable or influential that Congress would find it necessary to correct it.[11] Most importantly, the statute as written and interpreted by the courts effectively conveys the meaning given to it by the Bankruptcy Court here – the fact that one court, thirty years ago, may have ignored the clear terms of the statute in favor of the legislative history should not compel Congress to change those clear terms.

The Court thus finds that the Bankruptcy Court was correct in determining that the letter of credit was not a financial accommodation to the Debtor.

### CONCLUSION

This Court agrees with the Bankruptcy Court that the letters of credit were not contracts between the Debtor and the issuing institution, that they were not

---

[11]     The Court has found only a few cases citing *Swift Aire* in reference to this portion of the decision, and none follow it or are directly supportive of it. In *In re Taggatz*, the Bankruptcy Court for the Western District of Wisconsin observed that "[w]hether a letter of credit is property of the estate is an unsettled issue" in terms of § 365(c)(2) and other law, and declined to "add its own dicta to the cacophony of opinions in this area." 106 B.R. 983, 988 n. 4 (Bkrtcy. W.D. Wis. 1989) (citations omitted).

executory in nature, and that they were not a financial accommodation to or for the benefit of the Debtor, and thus agrees that § 365(c)(2) did not prevent the bankruptcy estate from drawing upon the letters of credit after the bankruptcy filing. Appellees thus did not proximately cause Appellant's damages and it was appropriate to grant summary judgment in Appellees' favor. Therefore, the Court AFFIRMS the Bankruptcy Court's grant of summary judgment in Appellees' favor. IT IS SO ORDERED.

Entered this <u>11th</u> day of September, 2013.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
